## Case No. 5,293.

### Ex parte GEARY.

[2 Biss. 485;[1] 3 Chi. Leg. News, 209.]

Circuit Court, N. D. Illinois. March Term, 1871.

WHEN COURT MAY PRESCRIBE PLACE OF PUNISH-MENT—HARD LABOR IN PENITENTIARY—OFFEND-ER CANNOT OBJECT THAT STATE IS NOT AUTHOR-IZED TO RECEIVE HIM—TERM MAY BE DIVIDED.

1. Unless the law of congress prescribes in what particular place the punishment of an offense shall be executed, the district court has the power to designate any place within its jurisdiction, and, subject to this qualification, the acts of congress of March 3, 1825 [4 Stat. 118], June 30, 1834 [4 Stat. 739], and March 3, 1865 [13 Stat. 500], so far as they refer to the place of imprisonment, are merely declaratory.

2. As by the laws of Illinois the prisoners in the state penitentiary are subject to hard labor, unless it is otherwise directed in their sentence, and the act of June 30, 1834, provides that criminals sentenced by the United States courts shall be subject to the same discipline and treatment as convicts sentenced by the state courts, it follows as a conclusion of law that the former are subject to hard labor as a part of the imprisonment. It is not necessary, in order to clothe the court with authority to imprison in the penitentiary, that a part of the punishment, by the terms of the sentence, should be hard labor.

[Cited in U. S. v. Tod, 25 Fed. 816.]

3. The state would have the right to refuse the use of its penitentiary to the prisoners of the United States, but where for more than thirty years prisoners convicted in the courts of the United States have been sentenced to the penitentiary, and have been there received and kept, with the knowledge and acquiescence of the state authorities, and their expenses paid by the United States, it is not competent for an offender sentenced to the penitentiary by the federal court, to object that there is no express legislation by the state authorizing such prisoners to be there confined; such objection could only be made by the state.

[Cited in Ex parte Brooks, 29 Fed. 85; Erwin v. U. S., 37 Fed. 485.]

4. The district court does not exceed its power in fixing a part of the term of imprisonment in the county jail, and the remainder in the penitentiary.

5. The usual practice on conviction is for the court to direct the marshal to take the prisoner to the penitentiary within a certain number of days, a sentence which, when the prisoner is already in jail, is essentially the same.

6. The fact that the prisoner is retained for a time either before or after sentence, in the county jail, does not, in either case, authorize a writ of habeas corpus.

James Geary was convicted in the district court of the United States for this district on the 28th of February, 1871, of the crime of "conspiracy to defraud the United States," under the thirtieth section of the act of March 2, 1867 (14 Stat. 484). The sentence of the court was that he be imprisoned in the jail of Cook county for twenty days, and that after the expiration of that time he be imprisoned in the state penitentiary at Joliet, in this district, for one year, and that he be fined $1,000 and pay costs, and that he stand committed until the fine and costs be paid; and the marshal was ordered to execute the sentence of the court upon the prisoner by placing him in the jail, and afterwards in the penitentiary. At the expiration of the twenty days he was taken by the marshal from the jail in Cook county to the penitentiary at Joliet, where he was held by the warden. This was an application by the prisoner for a writ of habeas corpus, the petition alleging that his imprisonment was illegal on three grounds: (1) Under the third section of the act of congress of March 3, 1865, the court had no authority to direct his imprisonment to be in the penitentiary, because the term for which he was imprisoned did not exceed one year. (2) The penitentiary is not allowed by the legislature of the state as a place of imprisonment for persons convicted and sentenced in the courts of the United States, and, therefore, it is not within the terms of the act of congress. (3) The court could not divide the punishment, making it part in the county jail and part in the penitentiary.

Robert Hervey, Jas. R. Doolittle, and R. H. Forrester, for petitioner.

J. O. Glover, U. S. Dist. Atty., and L. H. Boutell, Asst. Dist. Atty., for the United States.

DRUMMOND, Circuit Judge. The only question proper to be considered on this application is, whether the court can see that the issuing of the writ would be of no avail, the rule being that it should issue unless it would be useless.

The fifteenth section of the act of March 3, 1825 (4 Stat. 118), declares "where any criminal, convicted of any offense against the United States, shall be sentenced to imprisonment and confinement to hard labor, it shall be lawful for the court by which the sentence is passed, to order the same to be executed in any state prison or penitentiary within the district where such court is holden, the use of which prison or penitentiary may be allowed or granted by the legislature of such state for such purpose." The third section of the act of March 3, 1865 (13 Stat. 500), provides "In every case where any person convicted of any offense against the United States, shall be sentenced to imprisonment for a period longer than one year, it shall be lawful for the court by which the sentence is passed, to order the same to be executed in any state prison or penitentiary within the district or state where such court is held, the use of which prison or penitentiary is allowed by the legislature of such state for such purpose." The act of June 30, 1834 (4 Stat. 739), declared that any criminal imprisoned in a penitentiary, should be subject to the same discipline and treatment as the state convicts. The only material difference between the act of 1825 and that of 1865 is, that the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

former speaks of confinement to hard labor, and is without limitation as to the time of imprisonment, and declares that the imprisonment is to be in the penitentiary or state prison in the district where the court is held. The act of 1865 does not mention hard labor, but only imprisonment, and for a period longer than one year, and it may be executed in any penitentiary or state prison in the district or state where the court is held.

The legislation of congress has been by no means uniform as to making hard labor a part of the penalty of imprisonment. The crimes act of 1790 [1 Stat. 112], parts of which are still in force, seems not to have mentioned it at all as connected with imprisonment. In some of the acts passed between that time and the act of 1825, it is referred to, and not in others. The general act of 1825, in specifying imprisonment, in most cases adds "confinement to hard labor." In the various criminal laws which have been passed since, it is sometimes mentioned and sometimes omitted. In some cases the law, after imposing the penalty of imprisonment, to be adjudged by the court, declares separately that the prisoner shall be kept at hard labor, thus, apparently, making it an injunction upon the person who has the custody of the prisoner. The two sections which have been already cited from the act of 1825 and from that of 1865, are striking illustrations of this peculiarity. In the one, hard labor is mentioned; in the other, omitted. There would seem to be no good reason for this, unless it be that the act of 1825 apparently discriminates, and subsequent legislation does not.

In our state the law provides that the court, in the case of the confinement of a criminal in the penitentiary, shall designate what part of the punishment shall be solitary confinement, and what part shall be hard labor, and there are various statutes which provide for and regulate the hard labor by convicts in the penitentiary, and it is clear that all who are not by the order of the court in solitary confinement are subject to hard labor, and therefore it follows, as a conclusion of law, that when a person is sentenced by a court of the United States to the penitentiary of this state, he is subject to hard labor as a part of the imprisonment, because the act of 1834, as already stated, provides that the prisoners of the United States shall be subject to the same discipline and treatment as the prisoners of a state.

The only question that can arise upon this part of the case is, whether, under the language of the act of 1825, it is necessary, in order to clothe the court with the authority to imprison a convict in a penitentiary, that a part of the punishment, by the terms of the law, should be hard labor. The language of the statute, it will be recollected, is, "shall be sentenced to imprisonment and confinement to hard labor." The statute is without limit as to the time of the imprisonment. The act of 1865 omits the words "confinement to hard labor," and declares that there shall be authority in the court to impose this punishment, provided it is for a term exceeding one year. It may be that the true meaning of this law is that the imprisonment in the penitentiary should be for a period longer than one year, and that the punishment cannot be divided so that a part of it shall be in one place and a part of it in another, and thus bring it within the law, provided the term of imprisonment in both places together is more than one year. There would be no doubt upon the subject, provided it were a part of the penalty attached to this offense that the offender should be confined to hard labor, because whenever he is confined in the penitentiary, by the very terms of the law he becomes subject to hard labor, and both the statutes can stand, that of 1865 not necessarily repealing that of 1825.

In 1789 the first congress recommended to the legislatures of the several states that they should make laws requiring the keepers of jails to receive and keep prisoners committed under the authority of the United States. The implication arising from this resolution is, that the jails in the states respectively were proper places in which to imprison persons convicted under the laws of the United States, and that those who kept such jails might take charge of the prisoners thus convicted and sentenced; but, inasmuch as there might be cases where they would not, this resolution was passed, recommending to the legislatures to make it imperative on the keepers of jails to receive and keep them.

In 1791 another resolution was passed, which declared that, where a state had not complied with the recommendation, the marshal, under the direction of the judge, might be authorized to hire a convenient place to serve as a jail. Then, by a resolution of 1821, this provision was extended to all cases where the states had complied with the recommendation originally, and had afterward refused the use of their jails. It will be seen that during all this time there is nothing in the legislation of congress, except what is contained in these various resolutions, as to the place where persons convicted under the laws of the United States, should be imprisoned. The inference seems to be, throughout, that the jails of the respective states were proper places, and that the states ought to provide by law that the keepers of those jails should be obliged to receive and detain prisoners of the United States. And, in some instances, we know that there was, and still is, this legislation of the states. This being so, the question arises as to the authority of a court of the United States to imprison a person convicted of an offense, in any jail or prison in the district, authorized by the state to receive prisoners, even though the case might not be literally within the act of 1825 or 1865. And my opinion is, that the power is incidental to the court; that it follows necessarily from the legislation of congress, and from the authority

given to the court to imprison. The effect of that legislation is, that when the court sentences a party to imprisonment, it can be executed in any place where, by the authority or permission of the state, the prisoner can be received and detained.

What is a penitentiary of a state, but a prison in which a person convicted of an offense may be confined? In what respect is the penitentiary at Joliet different, so far as the power of this court is concerned, from the jail of this county? The court has the same power over the prisoner in the one case as in the other; can direct its officer as well to go to Joliet as to the jail of this county. The prisoner is just as much within the control and jurisdiction of the court in the one case as in the other, and I think, unless the law of congress prescribes in what particular place the punishment of an offense shall be executed, that the court has the power to declare that the imprisonment may be either in the jail of Cook county, or in the penitentiary at Joliet. When the question is as to the power of the court to direct imprisonment outside of its jurisdiction, then an act of congress is necessary, as in the law of 1865. The court, without some such provision, could not sentence a man beyond its jurisdiction, because the court would have no control over the prisoner. It was conceded in the argument that there is no law of congress which expressly directs that the imprisonment of any party shall be in a county jail, all of which it was admitted that the state had given, by legislation, for that purpose.

It is to be observed, and I think it throws great light upon this subject, that there are various acts of congress which declare that where a party has committed a particular offense, the penalty shall consist of fine or imprisonment, or fine and imprisonment in a penitentiary, thus limiting it to the penitentiary; as under the fourth section of the act of February 26, 1853 (10 Stat. 170). The penalty for the offense is, "on conviction in any court of the United States having jurisdiction thereof, shall pay a fine not exceeding $2,000 or suffer imprisonment in a penitentiary." The fifth section of the same act is, "shall pay a fine not exceeding $2,000, or suffer imprisonment in a penitentiary not exceeding three years." The sixth section of the same act is, "and shall upon conviction thereof be fined not exceeding three times the amount so offered, promised or given, and imprisoned in a penitentiary not exceeding three years." Of course there can be no doubt, that, when the law prescribes where the place of imprisonment shall be, it is the duty of the court to follow it, and the inference is that where the place is not prescribed, as is true of most offenses under acts of congress, the court has power to designate any prison within the jurisdiction of the court. There might be some argument in favor of the position taken by the counsel for the prisoner in this case, arising from the fact that the law under which this party was convicted declares it to be a misdemeanor; but the various laws of congress have, in a great measure, done away with the distinction that existed at common law between a felony and a misdemeanor; and, it is certain, for a mere misdemeanor a party may be imprisoned in the penitentiary. Suppose the only place of imprisonment in a state is a penitentiary—there are, or may be, such cases—what is the court of the United States to do? If all the prisoners within the limits of a state were confined to the state penitentiary, or prison, and there were no regular county jails, what would be done in such case with the prisoners of the United States? The view that I take, then, of these statutes is that they are declaratory acts, and nothing more; that they were passed for the purpose of removing doubts which might have existed in relation to the authority of the court, but that the court had authority, independent of those statutes. At common law the court of king's bench had power to sentence a convict to any prison in England. 1 Bish. Cr. Proc. 985, 885, and notes and authorities cited.

The next question is, whether the court had authority to imprison the defendant in the penitentiary, without some express legislation on the part of the state of Illinois, giving the right to the court there to imprison him.

The language of these statutes, it will be seen, and such, it is claimed, is the implication from the resolutions which have been referred to, is that the court has authority to imprison a convict in a state prison or jail, only where there is an express legislative permission given, and the instance is cited of such authority by an act of the legislature of this state in relation to county jails, passed shortly after the state was admitted into the Union, and which has existed ever since. There is no doubt that a state has the right to refuse the use of its jails or penitentiary to prisoners of the United States. They are all mere state buildings and institutions erected at the expense of the states, and under the authority of their laws. The government of the United States has no control over them, except with the consent of the states. Undoubtedly the United States could erect jails or penitentiaries within the limits of the several states, for the confinement of prisoners of the United States. That has not been done in this state. There is here, therefore, no jail or penitentiary, or building, erected by the United States, except, perhaps, it may be rooms intended for the temporary accommodation of prisoners of the United States.

The question is, whether, in the first place, there has been any legislation on this subject, and, secondly, whether it is absolutely necessary that there should be.

The counsel for the petitioner have stated, and so also have the counsel for the gov-

ernment, that they have been unable to find any act of the legislature, or any resolution, which expressly authorizes the federal court to direct a person convicted of crime to be imprisoned within the penitentiary of the state. I have not been able to find any in the limited time I have had to examine this subject. Whether there is any or not I am unable to say; but what are the facts in relation to the confinement of prisoners in the penitentiaries of this state? The penitentiary at Alton has been finished for the reception of prisoners nearly forty years. It is over thirty years since parties convicted in the federal courts of this state have been sentenced to imprisonment in the penitentiary, sometimes with hard labor expressed in the sentence of the court, and sometimes without. The first case that has been found by the district attorney is one in 1838—thirty-three years ago—and from that time to the present. numerous persons have been sentenced to imprisonment in the penitentiary of this state. The act in relation to the penitentiary at Joliet provides that the same laws, rules and regulations shall exist as to it as to the penitentiary at Alton. The question presented in this petition has never been made before in this state. For more than thirty years prisoners have been constantly sent to the penitentiary, and received without question by the authorities of the state, and bills for the use of the penitentiary, and for the keeping of prisoners, presented by the state and paid by the government.

One of two things, I think, is true from this state of facts: either that there was authority given by the legislature, and omitted in the various compilations of the laws and resolutions, or that there was some general law—like that of 1831, for example—which was construed as giving this authority to the court, which might be doubtful in its construction, and which might seem to apply simply to prisoners of the state. Whichever view be taken, it seems to me that the conclusion necessarily follows that it is not competent for the petitioner, under this state of facts, to make this objection. It is one that can only come from the state. If it be true that there was legislative authority given, of course that is an end of the question. If the authority was understood to exist from a general law so decided at the time, and that has been acquiesced in for more than thirty years by the authorities of the state, how much stronger would it be if there was an express declaration of the legislature of the state?

What is the object of a grant by the legislature of a state to authorize the courts of the United States to imprison convicts in the penitentiaries? It is nothing more than an indication of the will of the state, and I am not prepared to say that will may not be shown in some other way than by an act of the legislature. or a resolution.

Perhaps there might have been further inquiry whether or not an express grant by the legislature of the state had been made, but as I have no serious doubt upon the general question, I hardly thought it worth while to postpone the decision in order to obtain that information. It would be too serious a matter, after a practice so long continued as this, to allow a defendant to raise a question of this kind, the principle being, as I contend, that he can be confined, unless the act of congress expressly designates a particular place, in any prison within the jurisdiction of the court, the use of which is permitted by the state.

There is another question remaining. It is insisted that the court erred in fixing the imprisonment in two places, one in the county jail, the other in the penitentiary. Perhaps there is something objectionable in form, but it is a question of power on the part of the court. The point is, whether there is anything in the laws of congress which restricts the authority of the court as to the place of imprisonment in this case. I think there is not.

Practically, the same result follows in all cases of a party convicted in this court. When he is in the county jail, for example, the universal practice of the court is, if he is sent to the penitentiary, that the marshal be directed within a certain time to remove him there. Where the defendant is already imprisond in the jail of the county, because the marshal has a given time in which to remove the prisoner to the penitentiary of the state, does that authorize the defendant to apply for a writ of habeas corpus, and be released? When the verdict is rendered against a defendant he is in custody of the marshal, who in practice places him in the county jail, where he remains till removed to the penitentiary. It is a reasonable exercise of power on the part of the court and indispensable to the due execution of its mandate, and this sentence I take to be nothing more than this, except in form. If the marshal had been ordered, in this case, within twenty days to take the prisoner to the penitentiary, he being already in the jail, he would have to stay there until the marshal could remove him. The judge of the circuit court has no knowledge of the particular circumstances which induced the judge of the district court to divide the punishment in this case. It may have been some such object as that. While exception may be taken to this form of punishment, there can be none as a question of power or authority. On the contrary, the construction that has been given to this subject by this court for over twenty years, has been that all this legislation in relation to the place of imprisonment, except where the law particularly describes the place, is discretionary with the court, and that the acts of congress are only permissive. For example, can there be any question that, notwithstanding the acts of 1825 and 1865, the court would have the pow-

er to imprison a party subject to confinement in the penitentiary, in any jail within the district where the court is sitting? Certainly not. The power of the court is undoubted, and these acts are simply permissive; "it shall be lawful," not that it is compulsory; it is lawful if it is done, not that the court is obliged to do it. Writ refused.